■ In the Matter of LYNDA J. CALKINS, Respondent, v ROBBY D. CALKINS, Appellant. [765 NYS2d 714] —Spain, J. Appeal from an order of the Family Court of Otsego County (Coccoma, J.),

entered November 26, 2001, which, inter alia, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 4, for an upward modification of respondent's child support obligation.

The parties were married in 1986. In 1989, after they separated, Family Court, Schenectady County, issued an order requiring respondent to pay child support for their two infant children in the amount of $100 per week. In 1995, the parties entered into a written settlement agreement intended to allow petitioner to obtain a judgment of divorce by default in a pending matrimonial action in Supreme Court. The agreement states, in relevant part, that respondent's weekly child support obligation would have been $164 under the Child Support Standards Act (see Domestic Relations Law § 240 [1-b]; Family Ct Act § 413 [hereinafter CSSA]), which the parties expressly waived, and set respondent's child support obligation at $120 per week, citing a number of factors which warranted the deviation from the CSSA. The parties continue to be separated, but the agreement was never incorporated into a judgment of divorce. Neither party ever sought the enforcement of the child support provisions of the agreement.

In 2001, petitioner commenced this proceeding in Family Court seeking an upward modification of the 1989 support order, claiming a change in circumstances. In response, respondent argued that Family Court lacked authority to modify the 1989 support order, because of the 1995 settlement agreement and a pending divorce action in Saratoga County. The Hearing Examiner refused to be bound by either and held a hearing at which petitioner testified that the parties' children, both teenagers, were experiencing a dramatic increase in their financial needs, pointing to, among other things, their numerous church, school and athletic activities and the special medical needs of one of the children. Petitioner also outlined her own financial problems, including being disabled and unable to work, receiving only disability and SSI benefits since 1999. Respondent testified that he was a salaried employee with Albany County, that he has five other dependent children (three are his biological children and two are the children of his live-in girlfriend) and that he maintains health insurance for all five of his biological children.

The Hearing Examiner found that the needs of the parties' children had increased, that petitioner had to bear expenses not contemplated at the time of the 1989 order and, applying the CSSA guidelines, ordered respondent to pay $190 a week in child support retroactive to the date the petition was filed.

Respondent was further ordered to pay 89% (his proportion of the parties' combined income) of all uncovered health care costs for the children. Respondent filed objections to the Hearing Examiner's order, which Family Court dismissed. On respondent's appeal, we affirm.

Initially, we reject respondent's contention that Family Court should have enforced the 1995 agreement. Clearly, Family Court had continuing jurisdiction to modify the 1989 support order (*see* Family Ct Act § 451) and, in the absence of a Supreme Court support order, Family Court had the authority to fashion a support order even after the parties entered into a separation agreement (*see* Family Ct Act § 461 [a], [b]; *Priolo v Priolo,* 211 AD2d 627, 629 [1995], *lv denied* 86 NY2d 705 [1995]; *Matter of Hoppl v Hoppl,* 50 AD2d 59, 61-62 [1975], *affd* 40 NY2d 993 [1976]). Notably, the agreement was never presented to any court for review and approval of its deviation from the CSSA and for the incorporation of its terms into an order or judgment (*see* Domestic Relations Law § 240 [1-b] [h]; Family Ct Act § 413 [1] [h]). Indeed, at the time that petitioner filed the instant modification petition, respondent was paying the $100 per week in child support pursuant to the 1989 order rather than the $120 per week amount specified in the 1995 agreement.

Petitioner substantiated that the needs of their children have increased and testified as to her inability to work and her reliance on disability benefits. Further, while respondent's pay stubs and petitioner's financial disclosure are not in the record, the Hearing Examiner indicated that respondent made average weekly earnings, after FICA and Medicare deductions, of $760.86 in the first 34 weeks of 2001, as compared to petitioner's weekly disability income of $97.15. By the Hearing Examiner's calculations, respondent's gross yearly income is $42,842, a significant increase over his 1989 annual salary of $24,878. Given respondent's increased and higher income, as well as petitioner's inability to work and the children's increased needs, we conclude that Family Court properly found an unforeseen change in circumstances and concomitant showing of need warranting modification of the 1989 support order (*see* *Terrell v Terrell,* 299 AD2d 810, 811 [2002]).

We also reject respondent's assertion that the Hearing Examiner improperly used his overtime pay in calculating his income. Respondent failed to include in the record on appeal his pay stubs which had been provided to, and apparently relied on by, the Hearing Examiner, or any other evidence which might indicate that the overtime he received was not a reliable basis in calculating his yearly gross income.

Next, we find no merit in respondent's contention that, in light of his obligation to care for his other children and those of his girlfriend, the child support obligation set by the Hearing Examiner has reduced his income below the poverty level. Respondent is correct that the CSSA figure may be disregarded if it would drive his remaining income below the poverty line or below the self-support reserve (*see* Family Ct Act § 413 [1] [d]) and that Family Court may consider "[t]he needs of the children of [respondent] for whom [he] is providing support who are not subject to the instant action * * * and the financial resources of any person obligated to support such children * * * if the resources available to support such children are less than the resources available to support the children" here (Family Ct Act § 413 [1] [f] [8]).

However, using $760.86 as respondent's net weekly income, the Hearing Examiner correctly calculated that the CSSA standards result in a support obligation of $190 per week (*see* Family Ct Act § 413 [1] [b]; [3]), leaving him $570.86 per week (or $29,685 per year), well above the 2001 poverty level of $8,590 for a single person and the self-support reserve of $11,596.50 (*see* 66 Fed Reg 10695 [2001]; *cf. Bemis v Bemis,* 305 AD2d 739, 740-741 [2003]). Nor does that figure include the roughly $180 per week part-time earnings of respondent's girlfriend and there is no indication in the record that she is not able to work more (*see* *Matter of Hewitt v Hewitt,* 247 AD2d 751, 753 [1998]; *Matter of Picciullo v Collein,* 226 AD2d 643, 643-644 [1996]), or pursue child support for her two children (*see* *Matter of Hewitt v Hewitt, supra* at 753). Under these circumstances, respondent failed to demonstrate that deviating from the guidelines was warranted.

Crew III, J.P., Peters, Carpinello and Lahtinen, JJ., concur. Ordered that the order is affirmed, without costs.